UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:22-cr-00393 |
| | ) | JUDGE RICHARDSON |
| MILDER ESCOBAR-TEMAL | ) | |

## MOTION TO DISMISS INDICTMENT

Defendant Milder Escobar-Temal respectfully moves the Court to dismiss his single-count indictment because 18 U.S.C. § 922(g)(5), which prohibits possession of a firearm by any "alien" who "is illegally or unlawfully in the United States," violates the Second Amendment under the new standard established by *New York State Rifle & Pistol Ass'n Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

## STATEMENT OF FACTS

On December 12, 2022, the government filed a one-count indictment against Mr. Escobar-Temal charging the following:

> On or about October 12, 2022, in the Middle District of Tennessee, MILDER ESCOBAR-TEMAL, knowing he was an alien illegally and unlawfully in the United States, knowingly possessed a firearm, to wit: a Glock Model 23, .40 caliber pistol, a Taurus Model PT 809 9x19mm pistol, and a Hi-Point Model C9 9x19mm pistol; and the firearm was in and affecting commerce.
>
> In violation of Title 18, United States Code, Sections 922(g)(5) and 924.

(Indictment, R.1, PageID# 1.)

# ARGUMENT

A defendant can move to dismiss an indictment for failing to state an offense. Fed. R. Crim. P. 12(b)(3)(B). At this stage, "the indictment must be tested by its sufficiency to charge an offense," *United States v. Sampson*, 371 U.S. 75, 78 (1962), and "the allegations of the indictment must be taken as true," *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952). Escobar-Temal moves to dismiss Count One because, on its face, § 922(g)(5) violates the Second Amendment as recently interpreted by *New York State Rifle & Pistol Ass'n Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

Before *Bruen*, the courts used a two-step framework to assess Second Amendment challenges to firearms restrictions, with the second step involving a means-end scrutiny. *Bruen*, 142 S. Ct. at 2125; *see, e.g., United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012) ("We find this two-pronged approach appropriate and, thus, we adopt it in this Circuit.") At that second step, the courts would decide whether the restriction, given its relative severity, was adequately justified; they would weigh its costs and benefits. *Bruen*, 142 S. Ct. at 2126.

But *Bruen* expressly rejected that means-end or cost-benefit approach. *Id.* at 2127-30. *Bruen*'s six-justice majority announced a new approach looking instead strictly to "historical tradition":

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

2

> Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2129-30 (quoting *Konigsberg v. State Bar of California*, 366 U.S. 36, 50 (1961)). Thus, the Sixth Circuit's two-step framework are no longer valid. *See Cooper v. MRM Inv. Co.*, 367 F.3d 493, 507 (6th Cir. 2004) (circuit precedent losing binding force when abrogated by "an intervening Supreme Court decision").

### A. Section 922(g)(5) prohibits conduct protected by the Second Amendment.

Under *Bruen*'s new test, the Court must first determine whether the restricted conduct is conduct protected by the Second Amendment. *Id.* Here, the restricted conduct is "possess[ing]" a firearm. 18 U.S.C. § 922(n). The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. Amend. 2. *See Bruen*, 142 S. Ct. at 2122 (Second Amendment "protect[s] an individual's right to carry a handgun for self-defense outside the home" as well as inside the home). The protection of the right to "keep and bear Arms" plainly includes the conduct of "possessing" an ordinary firearm. *United States v. Dasilva*, 2022 U.S. Dist. LEXIS 213106, *11 (M.D. Penn. Nov. 23, 2022) (holding that, by prohibiting the possession of a firearm, § 922(g)(5) restricts an action protected by the Second Amendment); *see United States v. Nutter*, 2022 U.S. Dist. LEXIS 155038, *6 (S.D. W.Va. Aug. 29, 2022) (holding § 922(g)(9) restricts an action protected by the Second Amendment).

3

Although the Second Amendment clearly protects the act of possessing a firearm, it protects that action only when undertaken by "the people." U.S. Const. Amend. II. The Supreme Court has indicated that "'the people protected by the Fourth Amendment, and the First and Second Amendments . . . refers to a class of person who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990). Mr. Escobar-Temal has lived and worked in the United States for more than a decade and has two U.S. citizen children. He certainly belongs to "the people" protected by the Second Amendment. *United States v. Meza-Rodriguez*, 798 F.3d 664, 672 (7th Cir. 2015) ("[W]e see no principled way to carve out the Second Amendment and say that the unauthorized (or maybe all noncitizens) are excluded.") *See generally United States v. Perez*, 6 F.4th 448 (2d Cir. 2021) (assuming arguendo Second Amendment applies to unauthorized aliens); *United States v. Torres*, 911 F.3d 1253 (9th Cir. 2019) (same); *United States v. Huitron-Guizar*, 678 F.3d 1164 (10th Cir. 2012) (same); *United States v. Jimenez-Shilon*, 34 F.4th 1042 (11th Cir. 2022) (same); *but see United States v. Carpio-Leon*, 701 F.3d 974 (4th Cir. 2012) (holding the Second Amendment doesn't apply to such people); *United States v. Portillo-Munoz*, 643 F.3d 437 (5th Cir. 2011) (same); *United States v. Flores*, 663 F.3d 1022 (8th Cir. 2011) (same). This Court, like *Meza-Rodriguez*, should hold that the Second Amendment protects the rights of undocumented immigrants.

### B. The government cannot show a historical tradition of prohibiting the possession of firearms based on immigration status.

Because the Second Amendment applies to Mr. Escobar-Temal's possession of a firearm, the "government must . . . justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. During the period leading up to the adoption of the Second Amendment, did our Nation prohibit people from firearm possession based on immigration status? Or did it impose analogous restrictions? *Bruen*, 142 S. Ct. at 2131-32.

First, at that time, our Nation certainly had no such prohibition against people based on immigration status because "[t]he Nation's first 100 years was 'a period of unimpeded immigration.'" *Padilla v. Kentucky*, 559 U.S. 356, 360 (2010) (quoting C. Gordon & H. Rosenfield, Immigration Law and Procedure § 1.2a, p. 5 (1959)). "It was not until 1875 that Congress passed a statute barring convicts and prostitutes from entering the Country." *Id.* Thus, because no one lacked the legal status to immigrate to this country, it is clear that people within the United States were not denied the right to possess a firearm based on a lack of immigration status. Accordingly, the Court should find that § 922(g)(5) lacks a historical tradition dating back to the constitutional period.

Notwithstanding this fact, a few courts have held, post-*Bruen*, that the requisite historical tradition for § 922(g)(5) does exist, typically citing to colonial-era statutes that prohibited firearm possession by Native Americans, slaves, or those

5

unwilling to take an oath of allegiance. *United States v. Carbajal-Flores*, 2022 U.S. Dist. LEXIS 227254, *7 (S. D. Ill. Dec. 19, 2022) ("several colonies banned gun ownership by slaves, Native Americans, and those unwilling to take an oath of allegiance to the state"); *see Dasilva*, 2022 U.S. Dist. LEXIS 213106 at *29. But Native Americans of 1791 do not "meaningfully compare" to today's undocumented immigrants because Native Americans did not migrate to this country and were distrusted due to "direct conflict" with colonists as they sought to protect themselves and their lands from those invading colonists. *United States v. LeVeille*, 2023 U.S. Dist. LEXIS 37617, *10 n.3 (D.N.M. Mar. 7, 2023). Similarly, slaves were brought by force to this country and then they and their subsequent generations were subjected to, *inter alia*, invidious discrimination later deemed unconstitutional, and hence the example of their (unconstitutional) treatment does not serve as a legitimate template for governmental action.

That leaves only that statutes sometimes restricting firearm possession by those unwilling to make a pledge of allegiance. *LeVeille*, 2023 U.S. Dist. LEXIS 37617 at *12-13 (holding that such statutes are sufficiently analogous to justify upholding § 922(g)(5)). But such a class of persons does not meaningfully compare to today's undocumented immigrants because the law generally forbids such immigrants—absent proof of a special basis for gaining immigration status—from taking the oath of allegiance to the United States that is part and parcel of becoming a U.S. citizen. Consequently, such undocumented immigrants cannot be

6

Case 3:22-cr-00393 Document 19 Filed 03/15/23 Page 6 of 8 PageID #: 36

said, as a class, to be *refusing* an oath of allegiance. Moreover, the central concern of the Second Amendment is the ability to defend oneself using arms, *Bruen*, 142 S. Ct. 2133, and undocumented immigrants have that need as much, or more, than anyone in this country since they are often deterred from turning to police for protection due to fears of deportation. *See* Prevention of Anti-Immigrant Violence Act of 2021, H.R. 2536, 117th Cong. § 2 (reporting that anti-immigrant violence is "on the rise" and stating that "[m]any immigrant advocates cite fear of deportation as one of the reasons people are not coming forward to report crimes"). The historical tradition at the time of the constitutional convention was to allow such vulnerable individuals to protect themselves using firearms.

For these reasons, it appears the government cannot meet its burden, although at this early stage after the issuance of *Bruen* it is not possible to know what historical evidence the government might muster on this particular issue. *See generally Bruen*, 142 S. Ct. at 2130 (acknowledging that "'historical analysis can be difficult; it sometimes requires resolving threshold questions, and making nuanced judgments about which evidence to consult and how to interpret it'") (quoting *McDonald v. City of Chicago,* 561 U.S. 742, 803-804 (2010) (Scalia, J., concurring)). But absent evidence beyond that mustered in other cases to date, the Court should hold that § 922(g)(5) violates the Second Amendment, and accordingly it should dismiss Mr. Escobar-Temal's indictment.

7

## CONCLUSION

Because 18 U.S.C. § 922(g)(5) violates the Second Amendment, the Court must dismiss the indictment.

Respectfully submitted,

/s/ *Caryll S. Alpert*
CARYLL S. ALPERT (BPR# 017021)
Senior Litigator
Office of the Federal Public Defender
810 Broadway, Suite 200
Nashville, TN 37203
615-736-5047
Caryll_Alpert@fd.org

Attorney for Milder Escobar-Temal

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2023, I electronically filed the foregoing Motion to Dismiss Indictment with the clerk of the court by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Joseph P. Montminy, Assistant United States Attorney, 719 Church Street, Suite 3300, Nashville, TN 37203.

/s/ *Caryll S. Alpert*
CARYLL S. ALPERT